ABCMR Record of Proceedings (cont)                    AR2003099314

BOARD VOTE:

_____ _____ _____    GRANT FULL RELIEF

_____ _____ _____    GRANT PARTIAL RELIEF

_____ _____    GRANT FORMAL HEARING

_____ _____ _____    DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

The evidence presented does not demonstrate the existence of a probable error
or injustice.  Therefore, the Board determined that the overall merits of this case
are insufficient as a basis for correction of the records of the individual
concerned.

_____
CHAIRPERSON

6

00046

5



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
1941 JEFFERSON DAVIS HIGHWAY 2ND FLOOR
ARLINGTON, VA 22202-4508

REPLY TO
ATTENTION OF

December 9, 2003

*1243G1*
*5-....... di.*

SFMR-RBX-QC/dsg

CHAMBERS, Christopher M.
~~████████~~
AR2001056368

Gary Myers & Associates
78 Clark Mill Road
Weare NJ 03281 4608

Dear Mr. Myers:

I am responding to your letter, dated November 13, 2003, to the Army Board for Correction of Military Records (ABCMR) on behalf of Mr. Christopher M. Chambers concerning his previously submitted application for correction of his military records. My office provides support to the ABCMR.

I have forwarded your letter and all enclosures to the ABCMR for processing.

I trust this information is helpful.

Sincerely,

Rick A. Schweigert
Chief Analyst

Printed on ✪ Recycled Paper

*Inv 124 361*
*Party 50378*
*Ar 2003099314*

**6**

Reply to:

78 Clark Mill Road
Weare, NH 03281
800-355-1095
603-529-3455
fax 529-3009

Washington, D.C.
202-857-8465
800-355-1095

email: grmyers44@aol.com

## Gary Myers & Associates
### Attorneys-at-Law

Gary R. Myers
Admitted in the
District of Columbia

Item ID:.........7764.......23378
Name:...........CHAMBERS, CHRISTOPHER M.
SSN:...........
MSN:...........
Doc Type:.........Reco
Receipt Date /Time.11/21/2003/08:09:00 AM
Edited By...........DANIED

13 Nov 03

MEMORANDUM FOR: Army Board for Correction
of Military Records
1941 Jefferson Davis Highway
2nd Floor
Arlington, VA 22202-4508
Bolling AFB, D.C.

SUBJECT: Request for Further
Consideration ICO
Christopher M. Chambers

AR 2001056368

1. This firm represents Christopher M. Chambers (hereafter "Applicant").

2. On 12 Apr 02 the Board granted relief to Applicant and an SSB was ordered for consideration of Applicant under the criteria in effect for the FY99 Lieutenant Colonel, Army Competitive Category Promotion Selection Board in the zone.

3. Our filing is at Exhibit I and the Board decision is at Exhibit II.

4. Applicant's corrected record went before the SSB and he was nonselected. See TAB D.

5. The SSB nonselection made little sense given the truly outstanding record of Applicant. It became reasonable to conclude that the SSB had acted arbitrarily in its denial.

6. Accordingly Applicant authorized litigation in the federal courts relying as a jurisdictional basis upon 10 U.S.C. § 628. We recognized that

Applicant's nonselection was nonjusticiable under Kreis v. Secretary of the Air Force, 866 F. 2d 1508, 1511 (D.C. Cir 1989). It is equally clear, however, that an arbitrary act by an SSB is justiciable, see unpublished opinion Homer v. United States, Court of Federal Claims, Docket No. 766C (2002).

7.    Such review is limited by Haselrig v. United States, 53 Fed. Cl. 111 (2002), which held that a specific flaw in the SSB procedures must be identified in order to find that SSB procedures are inconsistent with 10 U.S.C. § 628.

8.    Haselrig essentially eliminated statistical analysis and general criticisms of SSB procedures from being justiciable.

9.    Although Applicant is fully prepared to proceed with litigation, a new fact has come to Applicant's and counsel's attention which could be outcome determinative.

10.    Accordingly Applicant makes this additional submission and asks that the Board return his case to an SSB for the FY00 LTC, Army Competitive Category Promotion Selection Board. This is the first above the zone board for Applicant. If nonselected then to an SSB for any board where Applicant was considered.

11.    Applicant appealed an OER to the OSRB which appeal was granted on 10 Jul 95. PERSCOM, contrary to the direction of the OSRB, failed to update Applicant's promotion file prior to Applicant's second look for resident CGSC. TAB B. The first look resulted in nonselection due to the offending OER.

12.    Applicant was again nonselected for resident CGSC because of the PERSCOM failure. This result dramatically altered Applicant's infantry career.

13.    Based on Applicant's second resident CGSC nonselection, Applicant chose to branch transfer to Functional Area 49 (ORSA) in order to be more competitive as an officer and to align his branch designation with work he was then doing.

14.    In 1999, after his first nonselection to LTC, Applicant asked to be designated a 49. On 20 Dec 99 that request was granted. See TAB A where PERSCOM wrote:

"Your request to be redesignated into Functional Area 49, Operations Research/Systems Analysis was approved by the PERSCOM Functional Area Redesignation Board. Annotations concerning this action <u>will be made in your Career Management Information File (CMIF) and your official records. These changes should be reflected on your next ORB."</u>

15. It now has come to our attention that the 49 designator was not correctly added to Applicant's official records. Applicant's Retirement ORB shows Applicant in the Operational Specialty rather than ORSA. See TAB C.

16. Apparently the 49 designator appeared in some official records but not in others.

17. The failure of PERSCOM to properly and correctly annotate Applicant's specialty meant that:

    a. Applicant, subsequent to Dec 99 was continuing to compete with officers in the operational specialty even though he was in ORSA.

    b. The above facts made it impossible for Applicant to be promoted due to his nonoperational assignments.

    c. Had Applicant received a correct look at any time during the last years of his career, given his OER's at TAB E, his prospects of promotion would have been greatly enhanced.

18. Under these facts it is completely proper for this Board to grant further SSB review from FY 00 to the present.

Respectfully submitted,

*Gary Myers*

Gary Myers

# APPLICATION FOR CORRECTION OF MILITARY RECORD
## UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552
*(Please read instructions on reverse side BEFORE completing application.)*

*Form Approved*
*OMB No. 0704-0003*
*Expires Aug 31, 2000*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.**

## PRIVACY ACT STATEMENT

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

ROUTINE USE(S): None.

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA**

| a. BRANCH OF SERVICE (X one) | | | | | |
|---|---|---|---|---|---|
| X | ARMY | NAVY | AIR FORCE | MARINE CORPS | COAST GUARD |

| b. NAME (Last, First, Middle Initial) (Please print) | c. PRESENT PAY GRADE | d. SERVICE NUMBER (If applicable) | e. SSN |
|---|---|---|---|
| CHAMBERS, CHRISTOPHER M. | O-4 | N/A | |

| 2. TYPE OF DISCHARGE (If by court-martial, state type of court) N/A | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES (Active duty, Retired, Reserve, etc.) ACTIVE DUTY | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY N/A |
|---|---|---|

| 5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD | 6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. (No expense to the Government) (X one) YES NO |
|---|---|

**7. COUNSEL** *(If any)*

| a. NAME (Last, First, Middle Initial) | b. ADDRESS (Street, Apartment Number, City, State and ZIP Code) |
|---|---|
| MYERS, GARY R. | |

**8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:**

SEE ATTACHED

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**

SEE ATTACHED

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING:** *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*

SEE ATTACHED

**11. ALLEGED ERROR OR INJUSTICE**

| a. DATE OF DISCOVERY | b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD |
|---|---|
| 1999 | SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION. |

**12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

| SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER (Specify) |
|---|---|---|---|---|---|

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

| 14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE (Applicant should forward notification of all changes of address.) | b. TELEPHONE NUMBER (Include Area Code) 1-800-355-1095 | DOCUMENT NUMBER (Do not write in this space.) |
|---|---|---|
| 15. DATE SIGNED | 16. SIGNATURE (Applicant must sign here.) | |

DD FORM 149, SEP 1997 (EG)                    PREVIOUS EDITIONS OBSOLETE

00051

# SUPPLEMENTAL STATEMENT

## OF

## MAJOR CHRISTOPHER M. CHAMBERS



## ITEM 8.

1. I, MAJ Christopher M. Chambers, ▋▋▋▋▋ (hereafter "Applicant"),

    hereby respectfully request that:

    a. My OER for the period 7 May 96 to May 97 be made part

    of my record for purposes of a FY 99 in zone Special

    Selection Board (SSB) for selection to Lieutenant Colonel.

    b. My records be sent to an SSB.

## ITEMS 9. & 10.

2. Applicant has exhausted his administrative remedies by appealing to the

    OSRB.

3. The OSRB appeal is at TAB I. It forms the basis for this submission.

Respectfully submitted,

Gary Myers

Reply to:

78 Clark Mill Road
Weare, NH 03281
800-355-1095
603-529-3455
fax 529-3009

Washington, D.C.
202-857-8455
800-355-1095
email: grmyers44@aol.com

## Gary Myers & Associates
### Attorneys-at-Law

23 Jun 2000

Gary R. Myers
Admitted in the
District of Columbia

MEMORANDUM FOR: Total Army Personnel Command
ATTN: TAPC-MSE-A
200 Stovall Street
Alexandria, VA 22332-0443

SUBJECT: Appeal of OER
ICO MAJ Christopher M. Chambers

1. This firm represents MAJ Chambers (hereafter "Appellant").

2. This submission is made in duplicate original. This is a priority 1 appeal because special selection board treatment is requested and Appellant's year group is or has pinned on for LTC. The appeal is based upon administrative error. The OER in question is for the period 7 May 96 to 9 May 97. TAB A Appellant asked that he be given a Special Selection Board for the FY 99 Board.

3. Appellant was nonselected by the FY 99 LTC promotion selection board due to administrative error generated by PERSCOM and with no negligence or fault on the part of Appellant.

4. When the FY 99 LTC Board met, the TAB A OER was not in Appellant's file. This was a material error in that the OER was an annual report while Appellant was a Major and was for a period shortly before the Board convened.

I

00053

5. Appellant determined that, contrary to his belief, the TAB A OER was not seen by the FY 99 Board after results were published on 1 Jul 99. On 8 Sep 99 he sought reconsideration for promotion at TAB B with a general officer supporting statement at TAB C.

6. On 29 Feb 2000 that request was denied at TAB D.

## FACTS

7. Appellant received the TAB A OER in the normal course. He signed off on the OER 20 Jun 97 and it was forwarded. See, TAB A, Part II at block d. for the date.

8. The DCSPER denial of Appellant's request for reconsideration at TAB D suggested at pages 2 and 3 multiple reasons why Appellant should have known his TAB A OER was not in his OMPF. The first reason given is that Infantry Branch informed Appellant in Jun 97 that the TAB A OER was not in the OMPF.

9. Appellant of course knew this to be true because he did not sign the OER until 20 Jun 97 and in Jun of 97 he had no expectation that it would have appeared in his OMPF, particularly since it was coming from Egypt. That reason for denying relief was fatally flawed.

10. Then at TAB D DCSPER went on to describe two memoranda sent to Appellant, one dated 14 Jan 98 at TAB E and the other dated 24 Mar 98 at TAB F.

11. Appellant did receive these memoranda, but not separately. They were received at one time and stapled together with the 24 Mar 98 memorandum on top of the 14 Jan 98 memorandum.

12. You will note at TAB D DCSPER says the 14 Jan 98 was forwarded to Appellant on 17 Feb 98. This is not accurate. In fact the 14 Jan 98 memorandum was sent to Appellant with the 24 Mar 98 memorandum. That is the first time Appellant saw either document.

2

00054

13. Finally the DCSPER reports that Appellant's OMPF fiche was generated
    for mailing to him on 13 Jan and 2 Feb 99 and the promotion fiche was
    made on 23 Jan 99. The FY 99 Board convened on 2 Mar 99. Appellant
    did receive the fiche generated on 2 Feb 99. The reason for the 2 Feb 99
    fiche was that he never received the 13 Jan 99 fiche. By the time he
    received this fiche it was perilously close to the final date for submission
    to the FY 99 Board. He did note the absence of the TAB A OER, as he
    previously reported in his TAB B request for reconsideration.

14. When he discovered the TAB A OER was missing it was early Feb 99. He
    had precious little time to correct the problem. He did not have a personal
    or unofficial copy of the OER so he telephonically contacted his old unit
    in Egypt to see if the TAB A OER had been submitted and to ask that it be
    resubmitted. The personnel officer contacted by the officer did not recall
    the 16 month old conversation.

15. The personnel officer for the U.S. Army Element in Egypt agreed to
    resubmit their file copy. This did not happen. This failure was not due to
    fault or negligence by Appellant.

16. We now return to the memoranda date 14 Jan 98 and 24 Mar 98.

17. Contrary to what DCSPER said at TAB D, the 24 Mar 98 memorandum
    did not correctly identify the missing OER. In fact it identified the OER
    for the period May 97 to Sep 97. See TAB F for confirmation.

18. The reason DCSPER believed that the memorandum was accurate was
    that someone within PERSCOM had knowingly altered the document to
    show the correct dates. This fraud generated DCSPERs
    misstatement. See TAB G for the altered document which an IG
    investigation discovered.

19. In reliance upon this TAB F memorandum Appellant immediately caused
    his BNS-1 to resubmit the misidentified OER which was in fact already in
    his OMPF. The suspense date of 27 Apr 98 was met and until Appellant
    reviewed his fiche in Feb 99, he believed in good faith that all OERs were
    properly recorded in his OMPF. It was reasonable for Appellant to believe
    that the noted OER was missing. The Sep 97 close out date was the OER

3

00055

required by PERSCOM in the changeover to the new OER system. Since every officer in the Army was required to have an OER for that close out date, it was logical that this OER might be missing.

20. Because the absent OER was not recovered prior to the FY 99 Board, an MRF was placed in the record showing this time as unrated.

21. It is true that the memorandum at TAB E dated 14 Jan 98 accurately reports the dates of the TAB A OER, but this document was received simultaneously by Appellant with the TAB F 24 Mar 98 memorandum showing a different OER and superseding the 14 Jan 98 memorandum.

22. It was Appellant's reasonable belief that the superseding 24 Mar 98 document was the correct information coming as it did directly from PERSCOM. Further support of this position lies in the fact that the earlier 14 Jan 98 memorandum had a suspense date of 16 Mar 98 which had passed without protest and that the 24 Mar 98 memorandum was signed by the same person who signed the 14 Jan 98 memorandum.

23. Appellant concluded that the 24 Mar 98 memorandum was the operative document and took steps to get the OER referenced by it resubmitted and it was resubmitted Appellant reasonably believed he had complied.

24. Our position is that PERSCOM contributed to Appellant's nonselection in two ways:

      a. By failing to correctly identify the missing OER in written communication to Appellant and

      b. By failing to get Appellant's fiche to him in a timely fashion so that corrective action, upon discovery of the absence of the TAB A OER, could be taken.

25. Further, we believe these contributions were material and directly caused Appellant's nonselection.

00056

26. The only possible negligence attributable to Appellant is his failure to follow-up on the 14 Jan 98 memorandum. We submit to you that taken as a whole this was not negligence because:

    a. The document was received simultaneously with the 24 Mar 98 document which served to supersede the 14 Jan 98 document.

    b. The 14 Jan 98 memorandum had an expired suspense of 16 Mar 99 and Appellant had not been and never was contacted about a missed suspense date.

    c. The two documents came from the same office and the same person.

    d. The Army wide close out date as part of the OER change over made the May 97- Sep 97 OER a logical choice to be missing.

27. Hindsight is a remarkably clear means of saying what an officer should have done. Here the officer did what was rational and reasonable at the time and he has been penalized for it. Relief should be granted.

Respectfully submitted,

*Gary Myers*

Gary Myers

5

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (WO) | h. STA CODE |
|---|---|---|---|---|---|---|---|---|---|
| CHAMBERS, CHRISTOPHER | | MAJ | Year 95 | Month 01 | Day 01 | IN | 11A50 | | EG160 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMD CODE |
|---|---|---|
| USAE-MFO, SINAI, EGYPT, APO AE 09832 JOINT ACTIVITIES | 05  ANNUAL | JA |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | ☐ 1. GIVEN TO OFFICER | |
| Year 96 | Month 05 | Day 08 | Year 97 | Month 05 | Day 09 | | FS27 | ☐ 2. FORWARDED TO OFFICER | |

**q. EXPLANATION OF NONRATED PERIODS**
960509-960805 Lack of Rater Qualification. 960806 - 980807 Travel

**PART II - AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| TOLLE, STEVEN A. | | | |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT — COL, TC, USAE-MFO, SINAI, EGYPT, APO AE 09832, CHIEF OF SUPPORT                    DATE

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE |
|---|---|---|
| | | |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT                    DATE

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE |
|---|---|---|
| TADDONIO, FRANK T. | | |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT — COL, AV, USAE-MFO, SINAI, EGYPT, APO AE 09832, CHIEF OF STAFF                    DATE 26 JUN 97

| d. SIGNATURE OF RATED OFFICER | DATE 20 JUN 97 | e. DATE ENTERED ON DA FORM | f. RATED OFFICER COPY INITIALS |
|---|---|---|---|

**PART III - DUTY DESCRIPTION** (Rater)

**a. PRINCIPAL DUTY TITLE**  LIAISON OFFICER
**b. REFER TO PART IIIa, DA FORM 67-8-1**       **b. SSI/MOS**  11A48

Liaison Officer for the 2,600 member Multinational Force and Observers (MFO) deployed along the Israel-Egypt border, comprised of Army, Navy and Air Force elements from 11 nations. Represents the Force Commander (O-8 level) in Cairo in daily interactions with the Egyptian Ministry of Defense and the Egyptian Liaison Agency with International Organizations (LAWIO). Interfaces with a variety of Egyptian government agencies and business to facilitate MFO operations. Coordinates all actions required by the Director General's Representative in Cairo with appropriate staff sections in MFO. Plans, coordinates and executes multinational unit rotations, numbering 1100 soldiers per year, through Cairo. Supervises an Egyptian national serving as the Assistant Liaison Officer. Supports and assists the numerous V.I.P. visits to the MFO

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM** (Rater)

| i. PROFESSIONAL COMPETENCE (In items 1 through 14 below, evaluate the degree of agreement with the following statements by being descriptive of the rated officer. Any comment will be reflected in a box.) | HIGH DEGREE | | | LOW DEGREE | |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | | | | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | | | | | |
| 3. Maintains appropriate level of physical fitness  PASS 9705 | | | | | |
| 4. Motivates, challenges and develops subordinates | | | | | |
| 5. Performs under physical and mental stress | | | | | |
| 6. Encourages candor and frankness in subordinates | | | | | |
| 7. Clear and concise in written communication | | | | | |
| 8. Displays sound judgement | | | | | |
| 9. Seeks self-improvement | | | | | |
| 10. Is adaptable to changing situations | | | | | |
| 11. Sets and enforces high standards | | | | | |
| 12. Possesses military bearing and appearance  73/195 YES | | | | | |
| 13. Supports EO/EEO | | | | | |
| 14. Clear and concise in oral communication | | | | | |

**PROFESSIONAL ETHICS** (Comment on any area where the rated officer is particularly outstanding or needs improvement)

DEDICATION
RESPONSIBILITY
LOYALTY
DISCIPLINE
INTEGRITY
MORAL COURAGE
SELFLESSNESS
MORAL STANDARDS

(a.1,2,5)  A superb duty performance in one of the most difficult and complex working environments in the world.
(a.8,10)  Exceptionally talented and adept at resolving complex and politically sensitive problems.
(a.11,12)  An outstanding representative of our Army, his conduct and work ethic are unmatched.
(b.1,3,5)  Totally dedicated to his Army and his unit, an invaluable member of the MFO.
(b.6,7,8)  Does it all correctly the first time, a true leader.

DA FORM 67-8, 1 SEP 79       REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79.       **US ARMY OFFICER EVALUATION REPORT**
USAPPC V3.00

00058

ERED   960508-970509

**PART V · PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

.ED OFFICER'S NAME   CHAMBERS, CHRISTOPHER                    SSN

TED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS   ☒ YES  ☐ NO

IFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

| ☒ ALWAYS EXCEEDED REQUIREMENTS | ☐ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

AMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS

POTENTIAL!

MAJ Christopher Chambers performance of duty as the MFO Liaison Officer with the Arab Republic of pt was outstanding in every respect. As the Force Commander's representative he set a superb example of ication, integrity and responsibility. Working in a very sensitive and politically oriented environment, his omplishments are without equal. Calm, brilliant and totally focused he established professional relationships 1 ARE Defense officials, customs and immigration officials and other members of the government that wed him to effectively support the Force missions. He is an individual of absolute integrity and the highest al standards and these attributes served him well in this job. MAJ Chambers was responsible for the rotation ver six hundred soldiers through Cairo and demonstrated the technical expertise required to insure success. displayed the same professionalism in his support to numerous VIPs visiting the MFO. He applied these e skills in his daily assistance to the Director Generals Representative in Cairo and his staff. His ability to and coordinate sensitive and difficult actions was of immense value to the entire MFO. In summation or Chambers superbly executed all his duties while handling politically sensitive issues and by his efforts has ificantly enhanced the image and capabilities of the MFO.

OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| ☒ PROMOTE AHEAD OF CONTEMPORARIES | ☐ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER (Explain below) |

AENT ON POTENTIAL

or Chambers has all of the ability and attributes for promotion. Following his Branch Qualification, select for Lieutenant Colonel and Battalion command. Assign him within a Division where his outstanding rship abilities can be utilized.

**PART VI · INTERMEDIATE RATER**

IENTS

**PART VII · SENIOR RATER**

ITIAL EVALUATION (See Chapter 4, AR 623-105)

b. COMMENTS

MAJ Chambers performed all of his duties in a truly outstanding manner. Chris is an extraordinarily competent officer with superb communications skills. He was equally effective coordinating with high level dignitaries or working the smooth transition of soldiers through Cairo. Chris performed flawlessly with minimal guidance. Select for CGSC and promote to Lieutenant Colonel as soon as possible. Enormous potential.

DA USE ONLY — HI ... LO

PLETED DA FORM 67-8-1 WAS RECEIVED WITH PORT AND CONSIDERED IN MY EVALUATION VIEW

☐ YES    ☐ NO (Explain in b)

USAPPC V3.00

00059



E

DEPARTMENT OF THE ARMY
UNITED STATES MILITARY ACADEMY
WEST POINT, NEW YORK 10996

REPLY TO
ATTENTION OF

MAAG-P (600-8-29a)

8 Sep 99

MEMORANDUM FOR Commander, PERSCOM, ATTN: TAPC-MSP-S, 200 Stovall Street,
Alexandria, VA 22332-0443

SUBJECT: Request for Special Selection Board Promotion Reconsideration

1. Request reconsideration for promotion to Lieutenant-Colonel based on a
material error in my file, in accordance with AR 600-8-29 para 7-11.

2. After the results of the LTC promotion board were released in July, I
discussed the results with my chain of command and branch representative in an
attempt to understand my non-selection. Since I was fully branch qualified and
had strong performance throughout my career, my immediate concern was that my
complete-the-record OER may not have been included in my promotion file.
Although the OER was not listed on my OMPF at DA, it was later revealed that the
OER was in fact present in hard-copy for the promotion board. However, it was
further revealed that the OER from my short-tour deployment to Egypt (Jul 96 -
Jul 97) was neither present nor included in my official file for the board to
consider.

3. I was somewhat confused since PERSCOM had written me on 24 MAR 98 that I was
missing a different report, from the close-out of the old OER system (a period
covering May 97 thru Sep 97). It further stated that I must resolve the matter
by 27 APR 98. At my request, my BN S-1 resubmitted this OER and that particular
issue was resolved. However, when I reviewed my microfiche later, I found that
my OER from Egypt was also missing (Jul 96 to May 97). Since I could not locate
a personal/unofficial copy of that OER, I contacted my former unit by telephone
to see if it had in fact been submitted. The new Personnel Officer for the US
Army Element in Egypt did not know but agreed to resubmit their file copy on my
behalf. I believed, wrongfully as it turned out, that all problems were
completely resolved.

4. I strongly believe that the administrative error that caused the elimination
of an entire recent year of my performance must have had a material and negative
effect on the promotion board. I am certain the error was entirely innocent,
and probably due to the great volume of reports processed at the end of the
previous OER system and compounded by the potential difficulties of paper
submissions from units in remote locations. Since I am confident that I am
highly qualified with great potential to offer the Army in the grade of
Lieutenant-Colonel and above, I respectfully request a reconsideration of my
promotion. I have attached a copy of the missing OER for inclusion in my file.

Christopher M. Chambers
MAJ, IN
SSN ████████████

B

00060

MADN (MAAG-F/8Sep99) 1ˢᵗ End                    Dr. Grice/jj/DSN 688-5007
SUBJECT: Request for Special Selection Board Promotion Reconsideration

Dean of the Academic Board, United States Military Academy, West Point, New York
  10996-5000  24 September 1999

THRU  Superintendent, United States Military Academy, ATTN: MAAG-PM/MAJ Richardson,
      West Point, New York 10996-5000

FOR  Commander, PERSOM, ATTN: TAPC-MSP-S, 200 Stovall Street,
      Alexandria, VA 22332-0443

I strongly support Major Christopher M. Chambers' request to have his file reconsidered by a
Special Selection Board. Major Chambers is an outstanding officer fully deserving of promotion
to Lieutenant Colonel now. The absence from his promotion board file of a recent Officer
Evaluation Report do to an administrative error by the Army should warrant consideration by the
Special Selection Board.

                    Fletcher M. Lamkin, Jr.
                    Brigadier General, U.S. Army
                    Dean of the Academic Board

2

00061



DEPARTMENT OF THE ARMY
U.S. TOTAL ARMY PERSONNEL COMMAND
ALEXANDRIA, VA

22332-0442                                    baj



REPLY TO
ATTENTION OF

TAPC-MSE-A (623-105)                          2 9 FEB 2000                    C

MEMORANDUM FOR MAJ Christopher Chambers, U.S. Military Academy,
              ATTN:  MAAG-P, West Point, NY 10996

SUBJECT:  Request for Promotion Reconsideration

1.  Reference your letter, dated 8 September 1999, subject:
Request for Special Selection Board Promotion Reconsideration

2.  Following the addition of the report for the period 8 May
1996 to 9 May 1997, your records were made available to the DCSPER
Officer Special Review Board (OSRB) to determine whether promotion
reconsideration should be granted.  The Board determined that
promotion reconsideration is not warranted.  An extract of the
Board President's comments is enclosed.

FOR THE DEPUTY CHIEF OF STAFF FOR PERSONNEL:

Encl                              ERIC E. LARSEN
                                  Chief, Appeals and
                                     Corrections Branch

                                                                      D

 Printed on Recycled Paper

                                                                 00062



DAPE-MPC-S   (TAPC-MSP-S/9 Feb 00)   (600-8-29)   1st End

SUBJECT:  Request for Promotion Reconsideration – CHAMBERS, CHRISTOPHER, MAJ, ████████████, IN

DCSPER Special Review Boards,

                                28 FEB 2000
FOR Promotions Branch, TAPC-MSP-S

1.  Promotion reconsideration is not warranted as a result of the following changes to the applicant's record:  addition of an OER for the period 960508-970509 which was not in his file for the FY99 LTC, ACC Army Promotion Selection Board which convened on 2 Mar 99 and recessed on 30 Mar 99.

2.  DISCUSSION:

   a.  Paragraph 7-2a, AR 600-8-29 requires a determination of material error before a Special Selection Board (SSB) for promotion reconsideration is convened.  As a matter of policy, a material error is one that, had it been corrected prior to the time the officer was considered by the board that failed to recommend him or her for promotion, it would have resulted in a reasonable chance that the officer would have been recommended for promotion.  In determining if a material error exists, reconsideration may be warranted based on the (1) nature of the inaccuracy, (2) officer's overall record, and (3) selection rate of the promotion board concerned.

   b.  Additionally, paragraph 7-3b states that it is the individual officer's responsibility to review his or her ORB and OMPF before the board convenes and to notify the board, in writing, of possible administrative deficiencies in them.  This paragraph requires that the officer exercise reasonable diligence in discovering and attempting to correct errors in the ORB and OMPF before consideration by a SSB is warranted.  OSRB notes that the applicant alleges that he was not previously aware of the missing OER from his OMPF until he reviewed his promotion packet, after he was non-select for LTC.  He states he had received a PERSCOM letter on 24 Mar 98 telling him that he was missing a Closeout OER, May 97 – Sep 97, and this issue was resolved.  He claims he was not aware that his OER from his short tour to Egypt (May 96 – May 97) was missing from his file.

                                                                    00063



DAPE-MPC-S
SUBJECT: Request for Promotion Reconsideration - CHAMBERS, CHRISTOPHER, MAJ, ███████, IN

c. Selection boards should see complete and accurate records. In this case, the applicant contends a material error existed in his records that were seen by the FY99 LTC Promotion Selection Board that convened on 2 Mar 99 and recessed on 30 Mar 99. Although the applicant did not have an OER entered into his OMPF the OSRB determined a material error did not exist. The OSRB found that the applicant should have been aware of the missing report for the period 960508-970509 as numerous attempts were made by PERSCOM and his Personnel Support Center to have his missing OER accounted for. However, the applicant did not take any actions to correct this deficiency in his OMPF. His failure to respond to PERSCOM inquiries resulted in Evaluations Reports Branch placing a memorandum for record (MFR) into his evaluations file to administratively account for the otherwise unaccounted time. Therefore, the applicant's file that was seen by the promotion selection board was complete and did not have a material error; the file had the correct substitute document. Further, the applicant did not submit an appeal to remove the MFR and replace it with the previously requested OER until after he was non-select for LTC. The following relevant facts apply:

   X (1) Infantry Branch records contain a branch filed interview sheet from Jun 97 which indicates the applicant was told by the career manager during the review process that he was missing an OER for the rating period 960508-970507.

   X (2) 14 Jan 98, PERSCOM, Evaluations Reports Branch sent the applicant's servicing Personnel Support Center (PSC) a memorandum requesting clarification of the OER gap for the rating period 960508-970509.

   X (3) 17 Feb 98, the applicant's servicing PSC forwarded, by endorsement, the PERSCOM memo to the applicant and emphasized the HQDA suspense date (16 Mar 98). The OSRB notes the dates for the period covered on the PSC memo are shown as 960507-970510 and the forwarded memo from PERSCOM, Evaluations Reports Branch clearly indicates the period 960508-970509.

2

DAPE-MPC-S
SUBJECT:  Request for Promotion Reconsideration - CHAMBERS, CHRISTOPHER, MAJ, ███████████, IN

X (4) 24 Mar 98, PERSCOM, Evaluations Reports Branch sent a letter to the applicant explaining that the rating period 7 May 1996 to 9 May 1997 was unaccounted for in his official file.  The letter provided instructions to the applicant to ensure his file was complete.  The OSRB notes the period of report at the beginning of the memo shows 970510-970930 indicating the dates of the received report that caused the gap, which initiated the inquiry.  Further, the period of unaccounted time, 7 May 96 - 9 May 97, is indicated in the first sentence of this letter.

X (5) 15 May 98, PERSCOM, Evaluations Reports Branch entered a MFR into the applicant's official file indicating that an OER had not been received for the period 960508-970509.  The period was declared as NONRATED time.

[OSRB NOTE: This MFR is IAW PERSCOM policy to administratively account for otherwise unaccounted time.  This MFR entry into the applicant's OMPF was a result of his failure to reply to the memos addressed above.]

X (6) Officer Records Branch, PERSCOM verified a microfiche was requested and made of the applicant's OMPF on 13 Jan 99 and again on 2 Feb 99 for mailing to the applicant.  The promotion fiche was made on 23 Jan 99.  All of the microfiche produced had the same number of documents and images.  Therefore, the OSRB believes the applicant, if he reviewed his record, had ample opportunity to take corrective actions prior to the convening of the promotion selection board that did not select him for promotion.

(7) 8 Feb 00, Appeals and Corrections Branch approved the applicant's administrative appeal, dated 8 Sep 99.  The PERSCOM MFR was removed and the applicant's missing OER inserted.

3.  There is no evidence of a material error that warrants promotion reconsideration.  Further, the applicant provides no evidence of extenuating circumstances which could have precluded such updates or

3



DAPE-MPC-S
SUBJECT:  Request for Promotion Reconsideration - CHAMBERS,
CHRISTOPHER, MAJ, ▆▆▆▆▆▆▆▆, IN

reviews, there is no evidence of an effort by the applicant to
update his file despite numerous requests, nor is there an
indication that he took any action to correct his file prior to the
convening of the board that did not select him.  Paragraph 5-6b, AR
624-100 prohibits selection reconsideration when, in exercising
reasonable diligence, an officer could have discovered and corrected
an error in his record.  Each officer's responsibility in that
regard is sufficient to overcome deficiencies, including missing
evaluation reports, in the absence of reasons sufficient to excuse
the failure.

4.  All matters considered, promotion reconsideration is not
warranted.

3 Encls
nc

4

00066





U.S. TOTAL ARMY PERSONNEL COMMAND
ALEXANDRIA, VA
22332-0445

REPLY TO
ATTENTION OF

TAPC-MSE-R (623-105a)

S: 16 MAR 98
1 4 JAN 1998
MR06

MEMORANDUM FOR COMMANDER, US MILITARY ACADEMY,
ATTN: MAAG-P WEST POINT, NY 10996-1985



SUBJECT: Request for Clarification of OER Gap

NAME: CHAMBERS, CHRISTOPHER M. ████████, I/Q, MAJ/IN
REPORT PERIOD: 960508 - 970509
PSB: WP01

1. This office has received and processed an OER(97) on MAJ CHRISTOPHER M. CHAMBRS for the period 970510 - 970930. The previous report on file for this officer is an OER(05) for the period 950508 - 960507. The 367-day gap between these two reports requires an explanation.

2. Request you interview the rated officer and examine his/her Officer Record Brief (ORB) to determine the rated officer's status during the period of the gap:

   a. If a report was required for the period, either obtain a copy from the officer or else initiate a shell and support form to reconstruct the report.

   b. If the gap period was nonrated time which should have been included in the later report, provide us specific details and we will take corrective action.

   c. If the period was rated time that should have been included in one or the other of the two reports, you must submit an administrative appeal IAW Chapter 9, AR 623-105.

3. Be advised that the two reports mentioned in paragraph 1 above have already been accepted as a matter of record and cannot be altered except through the appeal process.

4. Failure to reply by the above suspense date may result in the period being declared non-rated.

5. POC for this action is Melinda Reed at DSN 221-9270.

FOR THE COMMANDER:

SIGNED

DIANA D. LUEKER
Chief Evaluation
   Reports Branch

23/08 00  FRI 14:21 FAX 410J796      MPU CAIRO                          @002



**DEPARTMENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
ALEXANDRIA, VA
22332-0445

2 4 MAR 1998

**F**

REPLY TO
ATTENTION OF
Evaluation Reports Branch

Reference:
Name: **Chambers, Christopher M.,**  **MAJ/IN, U/Q**
Period of Report: **970510-970930**
PSB: **DA00**
Examiner: **MR06**
Suspense: **27 APR 1998**

Major Christopher M. Chambers

Dear Major Chambers:

The period 10 May 1997 to 30 September 1997 is presently unaccounted for in your evaluation reports file. Since the period is greater than 90 days, a report probably was required but has not been accepted for file. As you know, the evaluation report is the single most important document used by career managers and selection boards to manage a career. Therefore, it's extremely important that your records are complete.

A suspense date was established as indicated above. Should this suspense date pass without response, your case will be put in our inactive files and no further action will be taken by this office to obtain a report for the gap period.

Request you contact your PSB immediately and provide them a copy of the report for this period. If you do not have one, provide information to the PSB for reconstruction of the report, or provide an explanation if the period was non-rated. If contact with you PSB is not feasible, you may send the information requested, in encl 1, directly to this office.

If you have any questions or wish additional information or assistance, please contact Melinda Reed at Commercial (703) 325-9270 or DSN 221-9270.

Sincerely,

*Diana D. Lueker*

Encl
Memorandum dtd 01 Jan 1998

DIANA D. LUEKER
Chief, Evaluation
Reports Branch

*F*

00068



**DEPARTMENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
ALEXANDRIA, VA
22332-0443



5 : MAR 1998

REPLY TO
ATTENTION OF

Evaluation Reports Branch

Reference:
Name: Chambers, Christopher M., , MAJ/IN, U/Q
Period of Report: 970510-970930
PSB: DA00
Examiner: MR06
Suspense: 27 APR 1998

Major Christopher M. Chambers

Dear Major Chambers:

The period 7 May 1996 to 9 May 1997 is presently unaccounted for in your evaluation reports file. Since the period is greater than 90 days, a report probably was required but has not been accepted for file. As you know, the evaluation report is the single most important document used by career managers and selection boards to manage a career. Therefore, it's extremely important that your records are complete.

A suspense date was established as indicated above. Should this suspense date pass without response, your case will be put in our inactive files and no further action will be taken by this office to obtain a report for the gap period.

Request you contact your PSB immediately and provide them a copy of the report for this period. If you do not have one, provide information to the PSB for reconstruction of the report, or provide an explanation if the period was non-rated. If contact with you PSB is not feasible, you may send the information requested, in encl 1, directly to this office.

If you have any questions or wish additional information or assistance, please contact Melinda Reed at Commercial (703) 325-9270 or DSN 221-9270.

Sincerely,

*Diana D. Lueker*

Encl
Memorandum dtd 01 Jan 1998

DIANA D. LUEKER
Chief, Evaluation
Reports Branch

Received by USMA AG form Reports Branch



G

00069

S:  12 Apr 02

SFMR-RBR - 1st End (29 Jan 02, Docket Number AR2001056368)
SUBJECT: ABCMR Proceedings

HQDA, OASA, Arlington, Virginia  22202-4508                8 February 2002

THRU:   Commander, Total Army Personnel Command, ATTN:  TAPC-MSE-A,
        200 Stovall Street, Alexandria, Virginia  22332-0400

TO:   US Army Review Boards Agency Support Division - St. Louis,
       ATTN:  SFMR-RBR-SL, 9700 Page Avenue, St. Louis, Missouri  63132-5200

1. Under the authority of Title 10, United States Code, section 1552, the
recommendation of the Army Board for Correction of Military Records is hereby
approved, and it is directed that all of the Department of the Army records of the
individual concerned be corrected as shown under Recommendation in the
Proceedings of the Board in this case.

2. Request necessary administrative action be taken to effect the correction of records
as indicated no later than 12 April 2002.  Further, request that the individual concerned
and counsel, if any, as well as any members of Congress who have shown interest be
advised of the correction and that the Board for Correction of Military Records be
furnished a copy of the correspondence.

BY ORDER OF THE SECRETARY OF THE ARMY:

Signed

Karl F. Schneider
Deputy Assistant Secretary
(Army Review Boards)

Encls

CF:
( ) Applicant
( ) SFMR
( ) DFAS
( ) Mr. Shaw
( ) Counsel



**DEPARTMENT OF THE ARMY**
BOARD FOR THE CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY, 2ND FLOOR
ARLINGTON VA 22202-4508

<u>PROCEEDINGS</u>

IN THE CASE OF:    CHAMBERS, CHRISTOPHER, M.


BOARD DATE:        29 January 2002
DOCKET NUMBER:  AR2001056368

    I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

    Mr. Carl W. S. Chun              Director
    Mr. Hubert S. Shaw, Jr.          Analyst

The following members, a quorum, were present:

    Mr. Arthur A. Omartian        Chairperson
    Mr. Melvin H. Meyer           Member
    Ms. Karen A. Heinz            Member

The applicant and counsel if any, did not appear before the Board.

The Board considered the following evidence:

Exhibit A - Application for correction of military
    records
Exhibit B - Military Personnel Records (including
        advisory opinion, if any)

<u>FINDINGS</u>:

1.  The applicant has exhausted or the Board has waived the requirement for exhaustion of all administrative remedies afforded by existing law or regulations.



Printed on   Recycled Paper

ABCMR Proceedings (cont)                                    AR2001056368

2. The applicant requests, in effect, that his Officer Evaluation Report (OER) for the period 7 May 1996 through 9 May 1997 be made part of his record and that his record be considered by a Special Selection Board (SSB) for promotion to lieutenant colonel (LTC) under criteria in effect for the FY99 [Fiscal Year 1999] Lieutenant Colonel, Army Competitive Category Promotion Selection Board

3. The applicant states that his contentions will be stated through counsel.

4. Counsel states that records show the applicant was assigned to the U.S. Army Element of the Multinational Force and Observers (MFO) from May 1996 to May 1997. He received a DA Form 67-8, Officer Evaluation Report (OER), covering the period of these duties [hereafter referred to as "contested OER#1"]. Counsel contends that the applicant was non-select by the FY99 LTC promotion selection board due to administrative error generated by the U.S. Total Army Personnel Command (PERSCOM) and with no negligence or fault on the part of applicant. When the FY99 LTC board met, contested OER#1 was not in applicant's file. Counsel contends that this was a material error in that contested OER#1 was an annual report while applicant was a major and contested OER#1 covered the applicant's service shortly before the promotion selection board convened.

5. Counsel states the applicant determined, contrary to his belief, that contested OER#1 was not seen by the FY99 LTC promotion selection board after results were published on 1 July 1999. Counsel also explains that, on 8 September 1999, the applicant sought promotion reconsideration with support from a general officer, but the Deputy Chief of Staff for Personnel (DCSPER) Officer Special Review Board (OSRB) denied this request essentially on the basis there was no material error since the applicant was not diligent in taking action to correct his records.

6. Counsel then provides background information in support of his contention that the applicant should be granted relief in this matter. He contends that the applicant received contested OER#1 in the "normal course", he signed off on contested OER#1 on 20 June 1997, and it was forwarded to the rater on 20 June 1997.

7. Counsel restates the OSRB's reasons for denial of applicant's request for reconsideration and the multiple reasons why applicant should have known contested OER#1 was not in his Official Military Personnel File (OMPF). Counsel states the first reason given by the OSRB for a finding of no material error is that Infantry Branch informed applicant in June 1997 that the contested OER was not in his OMPF. Counsel counters this argument with the fact that the applicant knew contested OER#1 was not in his OMPF because he did not sign contested OER#1 until 20 June 1997 and, in June of 1997, he had no expectation that it would have appeared in his OMPF, particularly since it was

2

ABCMR Proceedings (cont)                                    AR2001056368

coming from Egypt. Based on these facts counsel concludes that this line of reasoning by the OSRB for denying relief is "fatally flawed."

8.  Counsel then addresses the OSRB's finding that the applicant was twice notified contested OER#1 was not in his OMPF. Specifically, counsel points out the OSRB described two memoranda sent to applicant, one dated 14 January 1998 and the other dated 24 March 1998. Counsel states that the applicant received these memoranda, but contends they were received at the same time stapled together with the 24 March 1998 memorandum on top of the 14 January 1998 memorandum. Counsel notes that the OSRB states the 14 January 1998 memorandum was forwarded to the applicant on 17 February 1998. However, counsel contends that this statement is not accurate because the 14 January 1998 memorandum was sent to applicant with the 24 March 1998 memorandum which he contends is the first time applicant saw either document.

9.  Counsel also addresses the OSRB report that the applicant's OMPF microfiche was generated for mailing to him on 13 January 1999 and on 2 February 1999 and that the promotion fiche was made on 23 January 1999. The FY99 promotion selection board convened on 2 March 1999. Counsel asserts that the applicant received the microfiche generated on 2 February 1999 and that the reason for the 2 February 1999 fiche was that he never received the 13 January 1999 OMPF microfiche. Counsel contends that, by the time he received this fiche, it was perilously close to the final date for submissions to the FY99 promotion selection board.

10.  Counsel then describes the actions taken by the applicant to get the contested OER#1 placed in his records. Counsel contends that, when the applicant discovered contested OER#1 was missing, it was early February 1999 and that there was precious little time to correct the problem. He did not have a personal or unofficial copy of contested OER#1 so he telephonically contacted his old unit in Egypt to see if contested OER#1 had been submitted and to ask that it be resubmitted. The personnel officer contacted by the applicant agreed to resubmit a file copy of contested OER#1. Counsel contends that contested OER#1 was not resubmitted and that this failure was not due to fault or negligence by the applicant.

11.  Counsel addresses the memoranda, dated 14 January 1998 and 24 March 1998. He contends that, contrary to what the OSRB stated, the 24 March 1998 memorandum did not correctly identify contested OER#1; rather, it identified the complete-the-record OER for the period May 1997 to September 1997 [hereafter referred to as contested OER#2] as missing from the applicant's OMPF. Counsel further contends the reason OSRB believed that the memorandum was accurate was that someone within PERSCOM had knowingly altered the original 24 March 1998 PERSCOM memorandum to show the correct dates of contested OER#1 and that this fraud generated the OSRB's misstatement. Counsel

3

ABCMR Proceedings (cont)                                        AR2001056368

asserts that an Inspector General investigation discovered the altered document; however, counsel provides no evidence to support this contention.

12.  Counsel states that, after the 24 March 1998 notification by PERSCOM, the applicant immediately caused his Battalion S-1 [the battalion adjutant] to resubmit contested OER#2 which was in fact already in his OMPF.  The suspense date of 27 April 1998 was met and, until applicant reviewed his microfiche in February 1999, he believed in good faith that all OERs were properly recorded in his OMPF.  Counsel argues that it was reasonable for the applicant to believe that contested OER#2 was missing because the September 1997 close out date was consistent with the date for complete-the-record OERs required by PERSCOM in the changeover to the new OER system.  Counsel concludes that since every officer in the Army was required to have an OER for that close out date, it was logical that this OER might be the one missing from his records.

13.  Counsel then proceeds to set forth his arguments which support his contentions.  He asserts that because the absent OER was not recovered prior to the FY 1999 promotion selection board, a MFR [memorandum for record] was placed in the applicant's record showing this time as unrated.

14.  Counsel agrees that the 14 January 1998 memorandum accurately reports the dates of contested OER#1.  However, counsel further states that this document was received by the applicant simultaneously with the 24 March 1998 PERSCOM memorandum which shows the dates for contested OER#2 and which supersedes the 14 January 1998 PERSCOM memorandum.

15.  Counsel argues that it was the applicant's reasonable belief that the 24 March 1998 PERSCOM memorandum which superseded the 14 January 1998 PERSCOM memorandum was the correct information coming as it did directly from PERSCOM.  Further counsel argues that support of this position lies in the fact that the earlier 14 January 1998 memorandum had a suspense date of 16 March 1998 which had passed without protest and that the 24 March 1998 memorandum was signed by the same person who signed the 14 January 1998 memorandum.  Counsel argues that the applicant concluded the 24 March 1998 PERSCOM memorandum was the operative document and the applicant took steps to resubmit contested OER#2 referenced by the PERSCOM memorandum.  Counsel also concludes that once contested OER#2 was resubmitted the applicant reasonably believed he had complied.

16.  Counsel further asserts that he and the applicant believe PERSCOM contributed to applicant's promotion non-selection in two ways:

4

ABCMR Proceedings (cont)                          AR2001056368

    a.  "By failing to correctly identify the missing OER in written communication to the [applicant]; and

    b.  By failing to get [the applicant's] fiche to him in a timely fashion so that corrective action, upon discovery of the absence of [contested OER#1], could be taken."

17.  Counsel further contends that these actions by PERSCOM were material and directly caused the applicant's promotion non-selection and that the only possible negligence attributable to applicant is his failure to follow-up on the 14 January 1998 memorandum.  Counsel contends that, taken as a whole, the applicant was not negligent because:

    a.  The 14 January 1998 memorandum was received simultaneously with the 24 March 1998 memorandum and the 24 March 1998 memorandum superseded the 14 January 1998 document.

    b.  The 14 January 1998 memorandum had an expired suspense of 16 March 1998 and the applicant had not been and never was contacted about a missing suspense date.

    c.  The two memoranda came from the same office and were signed by the same person.

    d.  The Army wide close out date as part of the OER change over made the May 1997-September 1997 OER [contested OER#2] a logical choice to be missing.

18.  Counsel concludes his legal brief with the statement:  "Hindsight is a remarkably clear means of saying what an officer should have done.  Here the officer did what was rational and reasonable at the time and he has been penalized for it.  Relief should be granted."

19.  The applicant's military records show that he was commissioned upon graduation from the United States Military Academy and entered active duty on 25 May 1983.

20.  Records show that the applicant was assigned to the U.S. Army Element of the Multinational Force and Observers (MFO) from May 1996 to May 1997.  He received a DA Form 67-8, Officer Evaluation Report (contested OER#1), covering the period of these duties.

21.  Contested OER#1 covered the period 8 May 1996 through 9 May 1997 for duties as a liaison officer from the MFO to the Egyptian Ministry of Defense in Cairo, Egypt.  On 20 June 1997, the applicant placed his signature in item Part II

5

00075

ABCMR Proceedings (cont)                                    AR2001056368

(Authentication) indicating the administrative data in Part I was correct and that the rating officials for contested OER#1 were correct.

22.  The applicant received ratings of "1" in all 14 elements of professional competence and positive comments under professional ethics and competence from his rater, a Transportation Corps colonel.  In Part V (Performance and Potential Evaluation), the rater placed his "X" in the first block (Always Exceeded Requirements).  In Part Vc (Comments on Specific Aspects of the Performance), the rater noted the applicant's performance as a liaison officer to the Arab Republic of Egypt and his professional rapport with defense, customs, immigration, and other Egyptian government officials.  The rater further noted the applicant's ability to plan and coordinate sensitive actions.  In Part Vd (This Officer's Potential for Promotion to the Next Higher Grade), the rater placed him in the first block (Promote Ahead of Contemporaries) and stated:  [The applicant] "has all of the ability and attributes for promotion.  Following his Branch Qualification, select early for Lieutenant Colonel and Battalion command.  Assign him within a Division where his outstanding leadership abilities can be utilized." The rater authenticated his portion of contested OER#1 on 24 June 1997.

23.  In Part VIIa (Potential Evaluation), the senior rater (SR) placed his "X" in the second block and commented [the applicant] "performed all of his duties in a truly outstanding manner" and that he was "extraordinarily competent", "equally effective" coordinating with high level dignitaries or working with soldiers, and "performed flawlessly with minimal guidance."  The SR also wrote that the applicant should be selected for CGSC [Command and General Staff College] and promoted to lieutenant colonel as soon as possible and that he had enormous potential.  The SR profile for this report showed the applicant as one of two officers in the second block (2/2*/0/0/0/0/0/0/0).  (The asterisk indicates the applicant's position.)

24.  Part Io (Rated Officer Copy) of contested OER#1 does not contain an entry indicating that a copy was given to the applicant or that it was forwarded to the applicant.

25.. The copy of contested OER#1 on the applicant's OMPF microfiche, dated 14 December 2001, shows that contested OER#1 was received at HQDA and profiled on 6 July 1997.

26.  Counsel for the applicant submitted a copy of a 14 January 1998 memorandum from the Chief of the PERSCOM Evaluation Reports Branch to the servicing Personnel Support Center at the U.S. Military Academy requesting that the applicant be interviewed in regard to a 367 day non-rated period, specifically 8 May 1996 to 9 May 1997.

00076

ABCMR Proceedings (cont)                                    AR2001056368

27.  Counsel for the applicant submitted a 24 March 1998 memorandum from the Chief of the PERSCOM Evaluation Reports Branch to the applicant which stated that the OER for the period 10 May 1997 to 30 September 1997 was unaccounted for.  This memorandum provided instructions regarding the submission of a copy of this OER.

28.  The applicant's counsel also provided a copy of 31 March 1998 memorandum from the Chief of the PERSCOM Evaluation Reports Branch to the applicant which stated that the OER for the period 7 May 1996 to 9 May 1997 was unaccounted for.  The copy of this memorandum submitted to the Board clearly shows that a portion of the original first sentence had been altered and overprinted with the entry, "7 May 1996 to 9 May 1997."

29.  The applicant was considered for promotion to lieutenant colonel by the FY99 [Fiscal Year 1999] Lieutenant Colonel, Army Competitive Category Promotion Selection Board which convened on 2 March 1999 and adjourned on 30 March 1999.  He was not among those officers selected for promotion.

30.  The applicant requested reconsideration for promotion for lieutenant colonel by memorandum, dated 8 September 1999.  In that memorandum, he noted that he believed contested OER#2 (the complete-the-record OER) covering the rated period 10 May 1997 to 30 September 1997 was missing from his promotion file.  However, he wrote that he discovered contested OER#1 (the OER for the rated period 8 May 1996 to 9 May 1997) was actually missing from his promotion file.  The applicant stated in this request for reconsideration that he had contacted the personnel officer of the Army Element in Egypt who promised that he would forward a copy of contested OER#1, but apparently did not do so.  The applicant attached a copy of contested OER#1 to his memorandum and the Dean of the Academic Board at the U.S. Military Academy forwarded the request for promotion reconsideration to PERSCOM with a strong recommendation for approval.

31.  The DCSPER OSRB considered whether or not the applicant was entitled to promotion reconsideration.  On 28 February 2000, the OSRB advised the PERSCOM Promotions Branch that promotion reconsideration was not warranted in the applicant's case.  Essentially the OSRB found that in order for promotion reconsideration to occur there must be a material error in the record which if not present would have resulted in a reasonable chance that the applicant would have been recommended for promotion.  The OSRB also opined that it is the individual officer's responsibility to review his or her officer record brief and official military personnel file before the promotion board convenes and to notify the promotion board in writing of any deficiencies.  The OSRB determined that, although an OER was missing from the applicant's promotion file, material error did not exist because the applicant did know the contested

7

ABCMR Proceedings (cont)                            AR2001056368

OER was missing based on several notifications by PERSCOM and he did not take actions to correct this deficiency.

32.  The OSRB listed the key facts in this case as follows:

a.  In June 1997, the applicant was interviewed at Infantry Branch and was notified by his career manager that contested OER#1 had not yet been filed.

b.  On 14 January 1998, the PERSCOM Evaluation Reports Branch requested clarification from the applicant's servicing Personnel Support Center at the U.S. Military Academy regarding the OER gap for the period 8 May 1996 to 9 May 1997.

c.  On 17 February 1998, the applicant's servicing Personnel Support Center at the U.S. Military Academy forwarded the PERSCOM memorandum to the applicant and emphasized the PERSCOM suspense date of 16 March 1998. The OSRB noted the dates for the period covered on the memorandum from the servicing Personnel Service Center are shown as 960507- 970510 [7 May 1996 to 10 May 1997] and the forwarded memorandum from PERSCOM Evaluation Reports Branch clearly indicates the period 960508-970509 [8 May 1996 to 9 May 1997].

d.  On 24 March 1998, the PERSCOM Evaluation Reports Branch sent a letter to the applicant explaining that the rating period 7 May 1996 to 9 May 1997 was unaccounted for in his official file. The letter provided instructions to the applicant to ensure his file was complete. The OSRB notes the period of report at the beginning of the memorandum shows 970510-970930 indicating the dates of the received report that caused the gap, which initiated the inquiry.  Further, the period of unaccounted time, 7 May 1996-9 May 1997, is indicated in the first sentence of this letter.

e.  On 15 May 98, the PERSCOM, Evaluation Reports Branch entered a memorandum for record into the applicant's official file indicating that an OER had not been received for the period 960508-970509.  Further, this memorandum states that the period was declared as nonrated time.  The OSRB also noted that this memorandum for record is in accordance with PERSCOM policy to administratively account for otherwise unaccounted time.  The OSRB also concluded that the memorandum for record entry into the applicant's official military personnel file was a result of his failure to reply to the memoranda addressed above.

f.  Officer Records Branch of PERSCOM verified a microfiche was requested and made a part of the applicant's official military personnel file on 3 January 1999 and again on 2 February 1999 for mailing to the applicant.  The

00078